

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RPD:GMC
F.#2008R01592

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York  11722-4454*

January 28, 2009

The Honorable E. Thomas Boyle
United States Magistrate Judge
Eastern District of New York
830 Federal Plaza
Central Islip, New York 11722

      Re:  United States v. Nicholas Cosmo
           Docket No. 09-M-0066

Dear Judge Boyle:

    The government respectfully submits this letter in opposition to the defense counsel's request for the release of the defendant Nicholas Cosmo ("Cosmo") on bond as set forth in his January 28, 2009 memorandum (the "Def. Bail Memo."). For the reasons detailed below, the government submits that, given the current facts of this case, no condition or combination of conditions can reasonably ensure that the defendant will return to court and will not pose an economic threat to the community. Furthermore, even if release were warranted, the bond proposed by the defense is clearly inadequate. Thus, the government respectfully reiterates its request that the Court enter a permanent order of detention pursuant to 18 U.S.C. § 3142(e).[1]

I. <u>SUMMARY OF THE CHARGE AND ADDITIONAL EVIDENCE</u>

    As the Court is aware, the criminal Complaint arises out of a federal investigation by the United States Postal Inspection Service ("USPIS") and the FBI into a $370 million investment scheme masterminded by the defendant. The on-going examination of Agape World, Inc. ("AGAPE"), and Agape Merchant Advance, LLC ("AMA") records seized pursuant to search warrants on January 26, 2009 has revealed additional details about the defendant's fraud. The search records reveal that, in at least once instance, instead of using investor funds to extend interest-bearing bridge loans, the

---

[1] The government hereby incorporates its January 27, 2009 memorandum wherein it initially requested that the Court enter a permanent order of detention.

2

defendant used those funds to purchase stock which he placed in his own name. In addition, the records reveal that, although the AGAPE website claimed that the investment loans are 99% secured by first-position UCC filings and that each loan was collateralized by 100% commercial asset liens, those claims were not accurate even for the loans that actually were made. Of the loans that the government has found, many have no UCC filings whatsoever, and the others put AGAPE in a secondary position to other entities loaning money to the same borrowers. Furthermore, very few of the loans have commercial asset liens.

II. THE LOSS CALCULATION AND UNACCOUNTED FOR FUNDS

While the government does contend that this is a $370 million fraud, the government has never contended that the actual and ultimate loss to investors is $370 million and, in fact, the government recognizes that it will not be able to provide a responsible actual loss estimate until it is able to verify the investments made by, and returns paid to, each individual investor.[2] Notably however, even accepting *arguendo* the defense's various contentions about outstanding loans, estimated returns to investors and other offsets claimed in the defense memorandum, the defense concedes that, "[t]aken all together, these calculations **reduce the . . . losses . . . to approximately $90 million.**" (Def. Bail Memo. at 5) (emphasis added). While this figure does not include reductions for operating costs and funds returned to investors in 2006, the defense estimates that, at best, an adjustment for 2006 returns could reduce the loss amount to "approximately $51 million."[3] (Id.). Interestingly, both of these figures accept as unchallenged the allegation in the Complaint that, above and beyond these astronomical unaccountable losses, the defendant lost approximately $80 million through unauthorized

---

[2] Since the defendant's arrest on January 27, 2009, the government has received more than 400 communications from individuals reporting that they invested with the defendant or his companies. The communications suggest that the number of investors may significantly exceed the 1500 estimated in the Complaint.

[3] The $51 million figure is based, in part, on an assumption that AGAPE investors received approximately $39,000,000 in returns in 2006. (Def. Bail Memo. at 5). However, since the banking records reveal that AGAPE did not even take in that much money in 2006, it is inconceivable that whatever funds may have been returned to investors in 2006 to perpetuate the fraud equaled $39,000,000.

commodities trading and paid $55 million to his brokers. In short, even accepting the defense's current estimates, assumptions and most optimistic calculations, this is a massive fraud where more than $50 million is still unaccounted for. As such, the government believes that the defendant is a significant flight risk and that no condition or combination of conditions will ensure his future appearance in court.

III.  THE DEFENSE CALCULATIONS AND CLAIMED OUTSTANDING LOANS

While the government believes that the defense's own proffered calculations warrant the defendant's detention, the government believes that the defense's calculations are inaccurate for several reasons. The defense first contends that approximately $113,923,850 was returned to investors in 2007 and 2008 ($74,027,785 in 2007, $39,896,065 in 2008). It is not clear what records these estimates are based on and, while the government has extensive banking records and now has the AGAPE and AMA internal documents as a result of the search warrants, it still has not been able to responsibly estimate how much money was actually returned to investors in the course of the scheme. Thus, this figure is, at best, questionable at this time.

Furthermore, the defense's claim that there are 17 outstanding loans to 16 borrowers totaling $25 million, is overstated. In Footnote #2, the defense lists the purported borrowers who have outstanding loans but the defense does not specify what amounts are supposedly owed by each borrower. (Def. Bail Memo. 5). The government has reviewed records relating to those 16 companies and the records indicate that not all of those companies have outstanding loans. The companies are addressed in turn below.

### A. Bridgeport Partners and Carillon

Two companies, Caroline Park [4] and Bridgeport Partners, are listed as two separate and distinct loans but are actually tied together. Bridgeport Community Partners, LLC is the borrower for Carillon Park, located in Bridgeport, Connecticut. Documents seized during the search show a loan of approximately $1.4 million, which was closed in October of 2007. According to records, the loan had a term of six months with a 14% interest rate.

---

[4] The company name is actually Carillon Park according to the website and documents recovered.

4

### B. Sparanza

Sparanza, owned under the name 7940 Jericho Turnpike Corp., is a building currently under construction. A review of company records thus far has not revealed the existence of a loan. However, records do reveal AGAPE payments directly to vendors working on the site. Furthermore, according to a source the company is owned by an individual who was himself convicted in 2003 of bank fraud, in violation of Title 18 U.S.C. Section 1344, and served one year in jail. In June 2007, he was arrested again for violation of his supervised release conditions, namely associating with known felons.

### C. Adamis Pharmaceuticals

The defense also claims that Adamis Pharmaceuticals, based in Del Mar, California, owes money to AGAPE. According to records reviewed, in August 2007 AGAPE sent a $500,00 wire transfer to Adamis to purchase one million shares of stock. Two stock certificates, each in the amount of one million shares were recovered in the search of the AGAPE premises. However, interestingly, the stock certificates are in the name of the defendant Nicholas Cosmo, not AGAPE. While this all indicates that the defendant used investor funds to purchase stock shares that he put in his own name, it does not establish that Adamis owes money to AGAPE at this time.

### D. Spiral Frog

Another company listed as a bridge-loan borrower, Spiral Frog, also appears to be an investment rather than a loan. According to records and documents seized during the search warrant, COSMO purchased 186,545 shares of the companies' common stock and received an exchangeable note in the amount of $342,000. Among the Spiral Frog investment documents seized from AGAPE, there was a document entitled "Risk Factors" recovered. The first line of that document states "this investment has a high degree of risk". Clearly, this is in direct contradiction to what was advertised on the AGAPE website and told to investors who were assured that AGAPE's loans were "99% risk free."

### E. Carriage House

Carriage House has been used by COSMO and his representatives to obtain a large amount of investor funds. According to one broker interviewed on January 27, 2009, COSMO told several of his brokers that the Carriage House bridge loan was for $83 million. However, the owner of Carriage House has reported to

5

government agents that the loan amount was supposed to be approximately $990,000 but that it was in the form of a line of credit. The company has received approximately $300,000 to date and the money has been used for a duplex development in Maine. According to the owner, his loan is not due to mature until October 2009 when the construction is scheduled to be completed. Since September of 2008, COSMO and his representatives have told investors that Carriage House was behind in its payments and that their delay caused AGAPE to have to delay payments to investors from November to December 2008 and then again to January 2009. In January, investors were told that Carriage House had defaulted which, according to the owner of Carriage House, is not the case.

F. <u>The remainder of the companies</u>

The government's current financial accounting for the companies listed in Footnote 2 on page 5 of defense letter is on the attached spreadsheet. That synopsis reveals that, of the sixteen companies listed, the total "loan amount" was approximately $17.5 million -- a mere fraction of the money invested in the defendant's companies -- rather than the $25 million stated in defense letter. Furthermore, if you subtract the companies that were not actually bridge-loans, that figure is reduced to approximately $15.6 million. Additionally, two of those loans, those made to 508 W. Partners in the amount of $590,000 and to Orchard Street Partners in the amount of 850,000, are not first-position UCC filings.[5]

Thus, it is clear from the sampling of companies listed in the defense memorandum that: (1) the claimed outstanding loan amounts are inaccurate; (2) there were several companies listed that did not receive bridge loans at all; (3) loan amounts were inflated to encourage investors to invest; (4) COSMO falsely claimed that borrowers had defaulted in an effort to explain why AGAPE could not pay its own investors; and (4) COSMO personally benefitted by using AGAPE investors' money to purchase stock in other companies in his own name.

---

[5] A review of records reveals that both of these companies went to AGAPE for much larger loans. However, COSMO brought those investors to the Bank of Smithtown for further financing. 508 W. Partners borrowed $4.8 million from the bank and Orchard Street Partners borrowed $7 million from the bank. Therefore, the Bank of Smithtown is listed as the first position for default purposes and AGAPE is in a secondary position to the bank. Therefore COSMO's claim that the loans are 100% collateralized and that they are in first position UCC filing, was false.

6

IV.  THE DEFENDANT'S PROPOSED BAIL PACKAGE

The defense proposes that the defendant be release on a $750,000 bond signed by four family members (his wife, father, sister and brother-in-law) and secured by "one or more of the family member's homes." (Def. Bail Memo. at 6). Interestingly, the defendants mother is not among the proposed suretors, the defense does not indicate what properties would be posted and does not indicate what equity, if any, there may be in those properties. The proposed package is clearly inadequate.

As the Court is aware, the purpose of a secured bond is to ensure that the defendant will not flee because of the significant economic consequences suffered by the suretors should he do so. The fact that many of the victims in this case are longtime friends and close associates of the defendant calls into question whether he would be deterred by the potential that those close to him would suffer significant economic harm.

More importantly, records obtained in the search warrants reveal that two of the proposed suretors, the defendant's sister and brother-in-law, collectively received $893,000 -- an amount that exceeds the bond proposed by the defense -- in payments from AGAPE from February 2007 through September 2008. Thus, it would appear that all or some significant part of the portion of the property they would post would be covered by the proceeds of the defendant's own fraud. If the defendant is able, whether before or after flight, to use his ill-gotten gains to compensate the suretors who would suffer economic harm as a result of such flight, then the bond conditions will not deter him from fleeing.

V.  THE DEFENDANT SHOULD BE DETAINED ON RISK-OF-FLIGHT AND DANGEROUSNESS GROUNDS

As set forth in our prior submission, given the facts of this case, including the significant incarceration the defendant is facing and the fact that even the defense concedes that fraud proceeds in the tens of millions of dollars are unaccounted for, this defendant poses a significant flight risk.

The defense counsel asserts that COSMO is not an economic danger to the community because his picture has appeared on television and in newspapers and, thus, it is unlikely that anyone would be defrauded by him in the future. (Def. Bail Memo. at 3). This argument ignores the fact that there is still, even by the most optimistic defense estimates, more than $50 million in investor funds unaccounted for. Should the defendant be able to

7

access those unaccounted for funds, he could easily inflict further damage by depleting assets that could otherwise be returned to the victims. Thus, he remains a danger to the community.

VI. Conclusion

For the reasons set forth above, the government submits that it has established by a preponderance of the evidence that the defendant is a flight risk and by clear and convincing evidence that the defendant poses a threat to the community. As such, we respectfully request that the Court enter a permanent order of detention. Should the Court determine that release on some bond and under some conditions is appropriate, the Court should require that all conditions, including the filing of Judgments of Confession, be satisfied before the defendant is released.

                                    Respectfully submitted,

                                    BENTON J. CAMPBELL
                                    UNITED STATES ATTORNEY

By:     /s/ Grace M. Cucchissi
            Grace M. Cucchissi
            Assistant U.S. Attorney
            (631) 715-7846

## U.S. v. Nicholas Cosmo, et al

Analysis of Loans Disclosed in Defense Letter dated 1/28/09

| Loan Name | Listed by Meister Selig | Loan Amount | Comments |
|---|---|---|---|
| 1 Clemson Grand | Yes | 5,582,230.42 | |
| 2 Northway | Yes | 2,150,000.00 | |
| 3 X-Arena | Yes | 1,000,000.00 | |
| 4 Baja | Yes | 1,442,200.00 | |
| 5 Carillon Park | No | 0.00 | Loan was made to Bridgeport Partners (See # 10) |
| 6 Speranza | No | 565,656.00 | See NOTE A |
| 7 508 W. Partners | No | 590,000.00 | Loan is subordinate to 3 Bank of Smithtown loans totaling $4.87 million |
| 8 Orchard St. (Orch Partners) | No | 850,000.00 | Loan is subordinate to 2 Bank of Smithtown loans totaling $7 million |
| 9 Roland Lyons | Yes | 835,000.00 | |
| 10 Bridgeport Partners | Yes | 1,403,620.00 | |
| 11 Mastercraft Masonry | No | 185,311.25 | 9 separate transfers made between Oct '05 - Nov '08 |
| 12 United Steel | Yes | 1,100,000.00 | |
| 13 Adamis Pharmaceuticals | No | 1,000,000.00 | Two $500,000 transfers made in August 2007 |
| 14 Spiral Frog | No | 342,000.00 | |
| 15 Jefferson Street (148 Jeff) | Yes | 210,000.00 | |
| 16 Carriage House | No | 300,000.00 | No lien. Spoke w/developer, Arthur House |
| | | 17,556,017.67 | |

NOTE A: More than 45 payments were made from the Agape World Operating account to various 3rd party contractors/suppliers between Oct 2008 and Nov 2008 totaling $398,856. Said payments were in check form and were memorialized with the name of Speranza in the memo section.

An additional $166,800 was transferred to either of two accounts at JP Morgan Chase between Oct-Nov 2008. A total of six different transfers were noted during this period of time.