# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
## (Central Islip)

UNITED STATES OF AMERICA,

v.                                        2:09-cr-00255-DRH-ETB-1

NICHOLAS COSMO,

 Defendant

_____,

Assigned to: Judge Denis R. Hurley

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 1 5 2022   ★

LONG ISLAND OFFICE

## MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582 FOR IMMEDIATE RELEASE

## I.    INTRODUCTION

COMES NOW, Nicholas Cosmo ( hereinafter, "Cosmo" or "defendant"), pro se, respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(2) and the newly amended 18 U.S.C. §3582(c)(1)(A)(i) for an order reducing his sentence to time served based on his age (51), declining health, COVID-19, and his 14-years of served incarceration. Cosmo's circumstances satisfy the "extraordinary and compelling reasons" under §3582, as elaborated by the Sentencing Commission in U.S.S.G. §1B1.13. After considering the applicable factors set forth in 18 U.S.C. §3553(a), Cosmo respectfully requests that the Court grant his request for compassionate release and reduce his sentence to time served or a reduction in his sentence.

1

## II.  RELEVANT BACKGROUND

On April 25, 2012, a criminal complaint was unsealed in federal court in Central Islip charging JASON KERYC, ANTHONY MASSARO, ANTHONY CICCONE and DIANE KAYLOR, former account representatives of Agape World and Agape Merchant Advance, for their participation in a large-scale investment fraud scheme. The defendants' appeared before United States Magistrate Judge E. Thomas Boyle. Additional details will be provided through the Victim Notification System. PREVIOUS UPDATES On April 25, 2012, a criminal complaint was unsealed in federal court in Central Islip charging JASON KERYC, ANTHONY MASSARO, ANTHONY CICCONE and DIANE KAYLOR, former account representatives of Agape World and Agape Merchant Advance, for their participation in a large-scale investment fraud scheme. The defendants' initial appearances are scheduled this afternoon before United States Magistrate Judge E. Thomas Boyle at the United States Federal Courthouse in Central Islip, New York. Cosmo, the owner and president of Agape World, Inc. and Agape Merchant Advance, LLC, was arrested on January 26, 2009 pursuant to a federal complaint charging him with mail fraud. On April 29, 2009, Cosmo was arraigned before the Hon. Magistrate Thomas Boyle and pleaded not guilty to a 32-count indictment charging mail fraud and wire fraud. After a detention hearing, Judge Boyle granted bail in the amount of $750,000 secured by real property and money.

The conditions of bail were home confinement with an electronic bracelet with 24-hour monitoring by pretrial services. He is subject to random visits by probation and will only be able to leave the home for emergency medical issues. Any other requests to leave the home for any other purpose must be made in writing to the Court and requires prior approval of the Court. He was also not allowed internet access or allowed to transfer any assets. The government appealed this ruling regarding the amount of bail and on May 19, 2009 a bail hearing was held before Judge Hurley. On that date, Judge Hurley increased the bond to $1.25 million to be secured by three homes and several bank accounts of family members and friends. If the defendant meets the bail package requirements, he will be released on bond and will be subject to home confinement with an electronic bracelet with 24-hour monitoring. Special conditions were set which included random visits to the home by pre- trial services, no internet access, no outside employment, conduct no business within the home that requires fiduciary responsibilities and the defendant

2

will only be permitted to leave the home for medical emergencies. All other requests to leave the place of home detention must be pre-approved by pretrial services.

On September 25, 2009, the government made a bail application to have the defendant's bail revoked due to what it believes are violations of the bail conditions. On October 9, 2009, after a three-day bail revocation hearing, Judge Hurley ordered Cosmo to return to jail.

Before the Honorable Denis R. Hurley, United States District Judge, Eastern District of New York, 930 Federal Plaza, Central Islip, New York. On October 29, 2010, Cosmo pled guilty to one count each of mail fraud and wire fraud. On October 14, 2011, Nicholas Cosmo was sentenced to 25 years imprisonment and was ordered to pay $179 million in restitution to more than 4,000 victims. On August 26, 2010, Richard Barry, the former office manager of Agape World, Inc., entered a guilty plea to one count of conspiracy to commit wire and mail fraud in connection with the scheme involving Agape World's owner, defendant Nicholas Cosmo.

On appeal Cosmo argued his age, his gambling addiction, his good works, his family, similar sentences, his need for rehabilitation and his cooperation with the Court appointed Trustee; essentially amounting only to a list of factors a district court should have considered in imposing sentence. These factors allowed the district court to impose a different sentence. Finally, in Cosmo's PLEA the Court allowed him the right to appeal any sentence above 20 years and the probation department in his PSI also suggested to the judge a sentence of 20 years or less was sufficient in this case.

Accordingly, these facts coupled with the "extraordinary and compelling" set-forth below, Cosmo contends that the First Step Act of 2018 empowers this Court to provide relief and reduce his sentence to time served. Thus, the instant motion is being made in good-faith.

## III.   NO REASON FOR CONTINUING TO WAREHOUSE COSMO:

Because people grow, mature and evolve, and because conditions and circumstances change, it is virtually impossible to make sound decisions when first imposing sentences about precisely how long someone should spend behind bars. But that is exactly how the federal criminal justice system works. Judges are required to act as if they are omniscient and the prison terms they impose are – for

all intents and purposes – final. Congress did, when it abolished parole through passage of the Sentencing Reform Act of 1984, invested the U.S. Bureau of Prisons (the "BOP") with the discretion to revisit and review the sentences imposed on a few narrow categories of defendants. But the BOP largely has not exercised that authority, even for defendants who were sentenced decades ago, even for defendants serving exceedingly long prison terms or even for defendants for whom continued confinement can no longer readily be justified on moral or utilitarian grounds.

Responding to concerns that the BOP was not making adequate use of its legal authority to seek sentence reductions for qualified defendants, Congress recently vested federal judges with the power to do what they were previously prohibited from doing absent a motion from the Director of the BOP. Specifically, changes to 18 U.S.C. § 3582(c)(1)(A) contained in the First Step Act (which was signed into law on December 21, 2018) authorize courts to reduce the prison term – even to time served – of any defendant if it finds that "extraordinary and compelling reasons" warrant such a reduction. In other words, federal judges are now empowered to take a "second look" at the sentences imposed on defendants who are deserving and worthy of a "second look."

Cosmo is a non-violent offender who has served more than 14 years of his 25-year sentence – is deserving and worthy of just such a "second look." And, as set forth below, "extraordinary and compelling reasons" warrant a reduction of his 25-year sentence. Accordingly, and for all the reasons detailed below, he respectfully requests that this Court enter an Order, pursuant to 18 U.S.C. § 3582(c)(1)(A), reducing Cosmo 25-year sentence to time served (or, alternatively, to a term of years short of 25-years that this Court finds is consistent with the dictates of 18 U.S.C. § 3553(a)).

Cosmo does not dispute that his offense was decidedly serious. He did not engage in any acts of violence; he did operate a mail fraud scheme. Almost 14- years later – Cosmo is deserving of a "second look" and a reduced sentence. And, as detailed below, this Court is now authorized to take such a "second look" and empowered to reduce Cosmo sentence (even to time served).

Cosmo would also like this Honorable Court to consider the sentence disparity between him and his co-defendants at the firm.  Cosmo received a sentence 270%

4

higher than those that went to trial. Two (2) of Cosmo's codefendants lost at trial and received 6 and 9 years. THEY WERE BOTH ENHANCED the same amount as Cosmo $179 million. The third co-defendant took a plea and received 7 years and also was enhanced the same amount as Cosmo. He received a leadership enhancement but they kind of offset the fact they didn't get acceptance of responsibility like Cosmo did.

Congress made the foregoing changes in an effort to expand the use of 18 U.S.C. § 3582(c)(1)(A) in the reduction of sentences that no longer serve the penological objectives of the federal criminal justice system. Thus, today, federal judges have the power to order sentence reductions and, in doing so, are authorized to reduce prison terms (even to time served) on the full array of grounds reasonably encompassed by the phrase "extraordinary and compelling reasons." Put differently, relief under 18 U.S.C. § 3582(c)(1)(A) is now available to any defendant whose conditions have changed such that a fair-minded person could conclude that "extraordinary and compelling" reasons for a sentence reduction exist. United States v. Cantu-Rivera, Case No. 89-CR-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) is instructive with regard to this Court's newfound authority to reduce sentences based on "extraordinary and compelling reasons" (even if those reasons do not relate to medical condition, age or family circumstances). Initially, the court in Cantu-Rivera explained that "[t]he First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow district courts to modify sentences of imprisonment upon motion by the defendant if the defendant has fully exhausted all [BOP] administrative rights . . . or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. at *1 (internal quotation marks omitted). It then reduced that defendant's life sentence (for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine) to time served (after service of more than 30 years imprisonment) based principally on "the extraordinary degree of rehabilitation Mr. Cantu-Rivera has accomplished during the 30 years he has been incarcerated," including "extensive educational achievements," such as "completion of over 4,000 hours of teaching while in federal prison to complete a Teaching Aide apprenticeship with the Department of Labor," his "service as a teaching assistant in several prison facilities for high-school equivalency and English-as-a-Second-Language programs" and "his service in the BOP's suicide watch program, helping to care for inmates placed in solitary confinement due to suicide attempts." Id. at *2.

Similarly, in United States v. Cantu, Case No. 05-CR-458, 2019 WL 2498923
(S.D. Tex. June 17, 2019) the court properly noted that "[a] court may now,"
pursuant to 18 U.S.C. § 3582(c)(1)(A), "modify a defendant's sentence if it finds
on either the BOP's or the defendant's motion that 'extraordinary and compelling
reasons warrant such a reduction' and 'such a reduction is consistent with
applicable policy statements issued by the Sentencing Commission.'" Id. at *1. It
then reduced that defendant's 290-month sentence (which had previously been
reduced to 210 months based on Amendments 782 and 788 to the Guidelines) to
time served (after service of more than 14 years imprisonment) based principally
on his medical condition, even though he "ha[d] not presented evidence that his
reasons are extraordinary and compelling under the three explicitly defined
reasons" set forth in Application Note 1 to Section 1B1.13 of the Guidelines. Id. at
*3. And, in United States v. McGraw, Case No. 02-CR-00018, 2019 WL 2059488
(S.D. Ind. May 9, 2019) the court stated that the First Step Act's modification of 18
U.S.C. § 3582(c)(1)(A) "now provides an avenue for a defendant to seek a
[sentence reduction directly] from the Court" and that "courts have universally
turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and
compelling reasons' that may warrant a sentence reduction." Id. at *1. It then
reduced that defendant's life sentence (for possession with intent to distribute
methamphetamine) to time served (after service of more than 17 years
imprisonment) based principally on "his serious medical conditions," even though
he had a long criminal history and had occupied a "leadership" position in the
Diablos motorcycle gang. Id. at 2-6.

Cosmo Has Virtually No Disciplinary History violations over the course of his
more than 14- years behind bars (Exhibit 1) – an exceptional achievement for
someone who has been incarcerated in high and medium security facilities for
more than a decade and a fact that, in combination with the other factors detailed
herein, demonstrates "extraordinary and compelling reasons" supportive of a
sentence reduction.

It is, again, difficult, if not impossible, to determine who, after having been
convicted of a serious crime, has the capacity for change – that is, who, like
Cosmo, has the capacity for rehabilitation and redemption. Character is far from
static. And people grow, mature and evolve over the years. The criminal justice
system should recognize and adjust to that reality.

Moreover, there is little reason for continuing to warehouse people like Cosmo, who have been adequately punished by having served long prison terms, who have paid their "debt to society" and who no longer pose a danger to any individual or to society. The social costs to the families left behind, the loss of human capital and productivity and the need to give people a "second chance" all militate in favor of identifying people like Cosmo and considering them for release pursuant to 18 U.S.C. § 3582(c)(1)(A). In sum, he has completed many programs during his incarceration. (see attachment). Working two 2 jobs; and a mentor to many other inmates.

## <u>THE AFFECT OF THE FIRST STEP ACT</u>

On June 27, 2022 the United States Supreme Court clarified the purpose and scope of the FIRST STEP Act, ending a split in the Circuit Court regarding the scope and depth of the lower court's discretion to grant motions under Section 3582(c)(1)(A). In Concepcion v. United States, 597 US ____ (2022) the High Court held that; "The First Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." Id., Slip Opinion, pp. 6-18.

In drafting this piece of legislation Congress recognized the long ongoing battle for prison reform due to the harshness of the federal sentences.  Congress sought to allow the district courts to revisit sentences on a case by case basis and determine whether new facts and new laws, post facto, created "extraordinary and compelling" reasons to reduce a sentence, particularly in light of the insufferable restrictions of 28 U.S.C. Section 2244 (i.e. AEDPA).  To cure this long lingering illness Congress carved out a form of "safety valve" for modifying sentences that was previously available via federal parole, which had been abolished.

Defendants that could not previously apply for relief based on changes in law such as Apprendi and Alleyne, which constituted a fundamental deprivation of a constitutional right, due, primarily, to the AEDPA, can now seek justice from the district courts.

The sum of these parts is that the Supreme Court's ruling in Concepcion v. United States the district Courts now return to its pre-Comprehensive Crime Control Act status of again being empowered to modify sentences where it determines that "extraordinary and compelling" reasons exist.  And, Concepcion makes clear that it is for the district court to determine on a case by case basis what it deems extraordinary and compelling reviewing any and all new facts and changes in law

that have occurred since the initial sentencing and applying the Section 3553(a) factors to the new set of facts and circumstances.

**STANDARD:**

The standard for adjudicating a motion under 18 U.S.C. Section 3582(c)(1)(A) is for the district court to "consider intervening changes in law or fact and use its [unfettered] discretion" to determine whether a sentence can be modified, Concepcion v. United States, supra.

## DISCUSSION

When the dust settles, and the Court wades through the facts and legal propositions that have changed since the initial sentencing, the question will be whether these changes in law and fact constitute "extraordinary and compelling circumstances' ' sufficient to justify a modification of the sentence. See also, Concepcion v. United States, No. 20-1650, Slip Op. at 18 (U.S. June 27, 2022) ("[T]he First Step Act [does not] require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it."). Thus, this Honorable Court should consider all facts and legal propositions that have changed since the initial sentencing. United States v. Thatch, No. 20-6364 (4th Cir. Jun. 30, 2022).

The court must balance Petitioner's rehabilitation efforts with his extremely serious criminal conduct, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, No. 20-1650, 2022 WL 2295029, at *12 (U.S. June 27, 2022); Pepper, 562 U.S. at 480-81. The court also considered Petitioner's potential exposure to CO VID-19, his natural antibodies, his vaccine, his medical conditions, his age, and his release plan. United States v. Taylor, 4:14-CR-13-D (E.D.N.C. Jun. 27, 2022); and United States v. Ward, 5:11-CR-286-D (E.D.N.C. Jun. 28, 2022).

**COSMO'S PATTERN SCORE IS THE MINIMUM:**

Cosmo's actual Pattern Score number is now a Negative number according to the BOP's calculations. He is earning fifteen (15) days per month. It is clear, he has NO RISK of Recidivism, which supports that he is no danger to the community. He has taken many FSA and ACE classes. He also has been teaching an FSA class

for the last six months. He has earned days per month FSA credits which is also the maximum any inmate can earn. The BOP has already actually given Cosmo time credits towards early release and have changed his classification to the lowest it could possibly attain, (Camp eligible).

Furthermore, Cosmo has not missed one restitution payment since it has been imposed by the Court. Today, Cosmo is 51-years-old and has served over 60% of his time. With health issues that are definitely relevant. Clearly, these facts support that Cosmo is not the same man he was 14-years-ago.

## COSMO 'S MEDICAL CONDITION

The CDC list of risk factors was most recently updated on March 29, 2021. See https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." Here, Cosmo has severe hearing loss, probably due to COVID. His age and his 14-years of imprisonment in loud places. His weight, 185 pounds, placing him at high risk. See CDC guidelines.

Overweight: Cosmo merits relief because he is overweight, with a body mass index (BMI) of 185 pounds. The CDC previously stated that obesity, marked by a BMI of 30 or more, presented a risk of a severe outcome from COVID-19. More recently, on March 29, 2021, the CDC revised its list of risk factors to state that any BMI over 25 "can make you more likely" to suffer severe disease. See, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peoplewith-medical-conditions.html (accessed Aug. 12, 2021).

In prior months, this country saw a reduction of COVID-19 cases. In the fall the trend became more favorable. See David Leonhardt, Covid-19 Cases Keep Falling, N.Y. TIMES, Oct. 27, 2021, https://www.nytimes.com/2021/10/26/briefing/covid-cases-falling-delta.html ("The number of new daily COVID-19 cases has plunged since peaking on Sept. 1. Almost as encouraging as the magnitude of the decline is its breadth: Cases have been declining in every region."). But, the spread of the Delta variant reversed this trend. See Apoorva Mandavilli, What to Know About Breakthrough Infections and the Delta Variant, N.Y. TIMES (Aug. 14, 2021) https://www.nytimes.com/article/covid-breakthrough-delta-variant.html (noting that, as of August 14, 2021 "[i]nfections have spiked to the highest levels in six

months"). Indeed, the Delta variant is thought to be more virulent and capable of causing more severe illness than were earlier strains of COVID-19. See Delta Variant: What We Know About the Science, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (updated Aug. 6, 2021) (noting that the Delta variant is "more than [two times] as contagious as previous variants"); Jon Kamp & Brianna Abbott, Delta Variant Recedes Across the United States, WALL ST. J., Nov. 1, 2021, https://www.wsj.com/articles/delta-surge-of-covid-19-recedesleaving-winter-challenge-ahead-11635672600 ("The Delta-fueled wave continues to take a serious toll, but the seven-day average in reported deaths has dropped to about 1,400 a day from daily averages above 2,000 in late September, Johns Hopkins data show.").

More recently, the emergence of the Omicron variant, around the world and in the United States, has sparked further cause for concern. Although much remains unknown about Omicron, including its severity and the relative effectiveness of vaccines against the variant, it is believed to be highly contagious. See Omicron Variant: What You Need to Know, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicronvariant.html (last updated Dec. 13, 2021). Authorities warn that there remain reasons for caution, including relatively low levels of vaccination in some parts of the country, as well as the encroachment of colder weather and the holiday season, which will lead to an increase in the number of indoor gatherings. See Kamp & Abbott, supra. Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that may increase the chance of severe illness due to the virus. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

The CDC has repeatedly revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Most recently in December 2021, it again updated its guidance to reflect the most available data. See People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL & PREVENTION (Dec. 14, 2021), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; chronic

lung diseases, including COPD, asthma (moderate to severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia or other neurological conditions; diabetes (Type 1 and Type 2); Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, and hypertension; HIV; being immunocompromised; liver disease; obesity, where the body mass index ("BMI") is 25 or higher; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; mental health conditions, such as depression and schizophrenia spectrum disorders; substance use disorders; and tuberculosis. Id.

The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. See Older Adults at Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1. Furthermore, "[t]he risk of severe COVID19 increases as the number of underlying medical conditions increases in a person." People with Certain Medical Conditions, supra. To stem the spread of the virus, people were urged to practice "social distancing" and to wear masks. See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020). However, social distancing is particularly difficult in the penal setting. Seth, 2020 WL 2571168, at *2; Senate Judiciary Hrg. Transcript on Incarceration during COVID-19, REV.COM (June 2, 2020) (Testimony of BOP Dir. Michael Carvajal at 47:00) ("Prisons by design are not made for social distancing. They are on [sic] the opposite made to contain people in one area.").

Indeed, prisoners have little ability to isolate themselves from the threat posed by the coronavirus. Id.; see Cameron, 2020 WL 2569868, at *1; see also United States v. Mel, TDC-18-0571, 2020WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners usually "share bathrooms, laundry and eating areas," and are often "bunked in the same cell" with several others. Amanda Klonsky, An Epicenter of the Pandemic Will Be Jails and Prisons, if Inaction Continues, N.Y. TIMES (Mar. 16, 2020). And, they are not free to follow their own rules.

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate or distance themselves from others. See Kim Bellware, Prisoners and Guards Agree About Federal Coronavirus Response: 'We do Not Feel Safe,' WASH. POST (Aug. 24, 2020) (reporting use of non-reusable masks for months and a lack of transparency around policies for personal protective equipment and testing). They do not get to decide where, when, or how to eat or sleep.

Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. See Coreas v. Bounds, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID19."); see also Eddie Burkhalter et al., Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System, N.Y. TIMES (Apr. 16, 2021) (stating that the "cramped, often unsanitary settings of correctional institutions have been ideal for incubating and transmitting the disease. Social distancing is often not an option."); Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); accord Brown v. Plata, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted). On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. Seth, 2020 WL 2571168, at *2. Notably, the BOP implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread." 7 The New York Times reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2; See Cases in Jails and Prisons, N.Y. TIMES (Oct. 29, 2020) (On October 29, 2020, the New York Times reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.). On November 21,

2020, the New York Times reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems." America Is Letting the Coronavirus Rage Through Prisons, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html. On April 16, 2021, the New York Times reported that at least 39% of prisoners are known to have been infected in federal facilities. Eddie Burkhalter et al., Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System, N.Y. TIMES (Apr. 10, 2021). And, according to the article, the actual count is most likely much higher "because of the dearth of testing." Id. Nevertheless, with the passage of time, the outbreaks of COVID-19 have declined. The Department of Justice ("DOJ") recognized the unique risks from COVID-19 experienced by inmates and employees of the BOP. The DOJ adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. See U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Initially, the vaccines were made available to healthcare workers, the elderly in nursing homes, and first responders. But, the criteria for eligibility has expanded considerably, and the vaccine is now approved for all persons five years of age and older. See Cheyenne Haslett, FDA Authorizes COVID-19 Vaccine for Kids 5-11, ABC NEWS, Oct. 29, 2021, https://abcnews.go.com/Politics/fda-authorizes-covid-19-vaccine-kids11/story?id=80846188. Approximately 72% of all persons twelve years of age and older are fully vaccinated. See How Vaccinations Are Going in Your County and State, N.Y. Times, https://www.nytimes.com/interactive/2020/us/covid-19-vaccine-doses.html (last visited Jan. 14, 2022). And, 63% of the total U.S. population is fully vaccinated. See id. Moreover, about 77.1 million Americans have received a third or "booster" vaccine dose, which the CDC now recommends for all person's age 12 and older. See id.; COVID-19 Vaccine Booster Shots, CTRS. FOR DISEASE CONTROL, https://www.cdc.gov/media/releases/2022/s0105-Booster-Shot.html (last updated Jan. 5, 2022).
Given the vaccine rollout, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). COVID-19 Vaccine Guidance, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of

the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." Id. at 4. Its plan was for prisoners at heightened risk to receive priority for the vaccine. Id. at 6. The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of January 14, 2022, the BOP had 135,501 federal inmates and 36,000 staff. And, by that date, the BOP had administered 284,099 vaccine doses to staff and inmates. See https://www.bop.gov/coronavirus/ (last accessed Jan. 14, 2022).

As of January 14, 2022, the BOP reported that 6,043 out of a total 135,427 federal inmates and 939 BOP staff out of some 36,000 staff members, currently test positive for COVID-19; 42,678 inmates and 9,027 staff have recovered from the virus; and 277 inmates and seven staff members have died from the virus. Id. Moreover, the BOP has completed 129,202 COVID-19 tests. See id.

While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" United States v. Roeder , 807 Fed. Appx. 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held. Cosmo has made that showing here.


To begin with, Cosmo has established that he suffers from medical conditions that make him uniquely susceptible to serious illness or death if infected by COVID-19. Collectively, this evidence is enough to satisfy the Court that Cosmo does indeed face a heightened risk of serious illness or death; if Cosmo catches it again and the new variant (B4-B5) is now spreading throughout the country.  The BOP (including Devens) according to the CDC it is not responding to the current vaccines available. This is tremendously dangerous to Cosmo.

Cosmo is powerless to take the preventative self-care measures directed by the CDC for his high-risk group to remain safe from COVID-19 infection. He cannot self-quarantine or partake in "social distancing" in his prison facility. There are also community spaces where inmates and prison staff gather, including a common room, laundry facilities, barber shop, medical areas, dining hall, small library and gym. These high-density areas are precisely the kind of spaces that have caused the alarmingly high-spread rates of COVID-19 in prison. Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. Correctional health experts worry that no matter what precautions are taken by crowded prisons, these facilities may become incubators for the COVID- 19 disease.

During the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases because they could not maintain the level of separation and sanitation necessary to prevent widespread infection. "Prisons and Jails are Vulnerable to COVID-19 Outbreaks," The Verge (Mar. 7, 2020), available at https://bit.ly/2TNcNZY.

In sum, Cosmo submits that there are conditions, or a combination of conditions, the Court can set to ensure the safety of the community, should Cosmo be released. For example, the Court can order home detention or home incarceration as a more restrictive further condition of release. The Court may order that Cosmo remain in the custody of a designated person, who agrees to assume supervision, and to report any violation of a release to the Court.

In light of the circumstances of this case, Cosmo requests this Court to exercise its discretion pursuant to the First Step Act of 2018. Extraordinary and compelling reasons and the 18 U.S.C. §3553(a) factors warrant a reduction in Cosmo's sentence to time served. For the foregoing reasons, Cosmo respectfully requests that the Court grant a reduction in sentence to time served, amend the condition of supervised release as requested and appoint an attorney for the proceedings herein.

**Cosmo is Serving Hard Time:**

Cosmo seeks a reduction in his sentence for hard time served.

As a result of being on "lock-down status" approximately 60% of his time served at FMC Devens. Which is considered under the constitutional rights for prisoner hard time detention facility, invoking. several protections under the fifth, eight and fourteenth amendments of the United States Constitution.

There are several factors to consider for the motion that are present at FMC Devens that can further protections under the fifth, eight and fourteenth amendments and warrant the two days credit for one day served by federal inmates at such a facility.

Relevant Factors:

1)      FMC Devens is currently operating a communal Segregation prison limiting liberty interest afforded to the inmate in general population.

2)      The access to recreational services is limited, and at times less than one hour each time. At times several days can pass without any Recreation at all making the facility intolerable.

3)      Dietary needs of inmates are. below federal prison standards and "meals" can be "gruel." Inmates are having to  use discolored and brown water from sinks located in the cells to drink due to long lockdown hours which is tolerable for one or two days but cruel and unusual under the eight amendment beyond that. (In violation of basic human rights, e.g., proper nutrition leads to better mental and physical health).

4)      The time an inmate in the general population spends in his cell (or dorm area) can at times be in excess of 22 hours in a single day period, which can amount to solitary confinement and serious and significant deprivation of liberty.

5)      The lack of movement where an inmate who is not in protection segregation, isolated segregation, administrative segregation or otherwise disciplinary segregation is subjected to the aforementioned treatment creating a disproportionate punishment to offense.

6)      Personal hygiene is significantly degraded which depends on the inmate population which is transient in nature to maintain cleanliness of the facility and

common illness, which are easily avoidable, can become a problem
that the already limited medical staff is unable to suppress before the entirety of the
inmates is fleeted. During normal operations inmates have the opportunity to
utilize hair care to cut and maintain our hair but due to the lockdown we have been
unable to even cut our hair. Moreover, FMC Devens is lacking in the necessary
basic hygiene supplies.

7)    Medical care is scarce since the beginning of the lockdown due to Covid-19
in March of 2020. It can take months to see medical staff, including dental,
medical and mental health doctors. After applying to see any medical staff during
this pandemic and continuously waiting for a response, if any, being confined to
your cell up to 22 hours out of a 24-hour day easily depletes your mental health.
This situation has created a serious issue for those inmates dealing with depression
and anxiety, like Cosmo.

8)    Federal court will provide relief for deprivation of prisoner's constitutional
rights to be free of cruel and unusual punishment during their lockdown due to
Covid-19. When the conditions such as the ones at FMC Devens become such that
a prisoner is deprived of personal hygiene or their diet is inadequate, the eight and
fourteenth amendments are violated. In addition to punishment that s imposed
for an improper purpose or disproportionate to the offense can violate prisoner's
fifth amendment rights.

9)    The relevant lockdown has been more than two (2) years. As of today, Court
records and BOP data shows that FMC Devens is still under the harshest
restrictions as a result of Covid-19.

10)   No family visits since 2020. Today, Cosmo is living with 830 men. Yes,
Devens is back at full capacity and still on lockdown. With no more Covid testing.
And, if you do show symptoms, they put you in the SHU.

## **CONCLUSION**

Accordingly, Cosmo requests that the Court exercise its discretion to reduce his sentence to time served for all of his offenses. Recently, Cosmo's father had a severe seizure and today he needs Cosmo's assistance. If this petition is granted Cosmo will live with his parents and take care of them, they are 80 and 86 years old. Cosmo would be the primary caregiver for his parents. This house has already been approved by the Probation Department (Cosmo was released there during pre-trial). Furthermore, Cosmo has a job offer with a firm in Utah paying $70,000 a year, this job assists him in raising his three (3) Kids. Not only can this job help provide for Cosmo's 3 kids but also help him pay his restitution.  Cosmo's incarceration has caused a great hardship on his family.

Respectfully Submitted,

Nicholas Cosmo, pro-se

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on __7/28__, 2022 the foregoing PRO-SE MOTION IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 was served upon the U.S. Attorney for the EASTERN DISTRICT OF NEW YORK via U.S. mail and prepaid.

Nicholas Cosmo

# ATTACHMENT(S)

PADON. CASE#   C29226q



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: COSMO, NICHOLAS  49193-053

SEQUENCE: 00291960
Report Date: 03-04-2022



| | |
|---|---|
| Facility: | DEV DEVENS FMC |
| Name: | COSMO, NICHOLAS |
| Register No.: | 49193-053 |
| Quarters: | G04-432U |
| Age: | 50 |
| Date of Birth: | 05-19-1971 |

| | |
|---|---|
| Custody Level: | IN |
| Security Level: | LOW |
| Proj. Rel Date: | 10-22-2031 |
| Release Method: | GOOD |
| DNA Status: | BRO05501 / 10-18-2011 |

### Contact Information
**Release contact & address**
Nicholas Cosmo, FATHER
3178 CHERRYWOOD DR., WANTAGH, NY 11793
US
Phone (Mobile) : 516-783-1857

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 18:1343; WIRE FRAUD (CT 1) 18:1341; MAIL FRAUD (CT 11) | 300 MONTHS |

Date Sentence Computation Began:     10-14-2011
Sentencing District:     NEW YORK, EASTERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 /      0 /    446 | 202 | Years: 12 Months: 10 Days: | + 914     JC - 0     InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

### Program Plans
Inmate Cosmo arrived at FMC Devens on 06-23-2016, as a closer supervision transfer.  He is serving a sentence of 300 months incarceration, followed by 3 years supervised release for Wire Fraud and Mail Fraud.

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 09-09-2020 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 01-16-2022 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 01-16-2022 |
| N-COGNTV N | NEED - COGNITIONS NO | 01-16-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-29-2021 |
| N-EDUC N | NEED - EDUCATION NO | 01-16-2022 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 01-16-2022 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 01-16-2022 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 01-16-2022 |
| N-MEDICL N | NEED - MEDICAL NO | 01-16-2022 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 01-16-2022 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 01-16-2022 |
| N-TRAUMA Y | NEED - TRAUMA YES | 01-16-2022 |
| N-WORK Y | NEED - WORK YES | 01-16-2022 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 01-06-2022 |

### FSA Comments
Inmate Cosmo is a Low recidivism risk level, who is currently eligible to apply Federal Time Credits.  He has been reviewed with the following needs areas: Finance/Poverty, Substance Abuse, Trauma, and Work.  Inmate Cosmo has completed the following FSA classes: National Parenting Program; Basic Cognitive Skills; Houses of Healing;  Health and Wellness Throughout the Lifespan; Managing Your Diabetes; Healthy Steps for Older Adults; Arthritis Foundation Walk with Ease; Embracing Interfaith Cooperation; Healthy Steps for Older Adults; Brain Health as You Age; and A Matter of Balance.  He is currently participating in and assisting the instructor for the Money Smart class.  Furthermore, he is on the waiting list for the following FSA classes: Emotional Self-Regulation; Criminal Thinking; Cognitive Process Therapy; and Seeking Strength.



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: COSMO, NICHOLAS  49193-053

SEQUENCE: 00291960
Report Date: 03-04-2022

### Current Work Assignments

| Facl | Assignment | Description | Start |
|------|-----------|-------------|-------|
| DEV | G UNIT ORD | G UNIT ORDERLY | 09-28-2020 |
| DEV | REC ORDRLY | RECREATION ORDERLY - MAIN | 06-21-2021 |

### Work Assignment Summary

Inmate Cosmo is currently assigned to the work detail of Unit Orderly.  His duties are mainly comprised of maintaining the sanitation and safety of his assigned housing unit.  He has completed the following employable skills related classes: Finding a Job; Resume Writing; Principles of Construction; Job Skills; and Employment.

### Current Education Information

| Facl | Assignment | Description | Start |
|------|-----------|-------------|-------|
| DEV | ESL HAS | ENGLISH PROFICIENT | 02-25-1999 |
| DEV | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-25-1999 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| DEV LOW | C | READING IS FUNDAMENTAL | 01-05-2022 | 01-05-2022 |
| DEV LOW | C | RHU ACE FIND A JOB SELFSTUDY | 05-01-2021 | 05-31-2021 |
| DEV LOW | C | RHU ACE PROB SOLVING SELFSTUDY | 04-01-2021 | 04-30-2021 |
| DEV LOW | C | RHU ACE PROB SOLVING SELFSTUDY | 04-01-2021 | 04-30-2021 |
| DEV LOW | C | RHU ACE PROB SOLVING SELFSTUDY | 03-01-2021 | 03-31-2021 |
| DEV LOW | C | RHU ACE PROB SOLVING SELFSTUDY | 03-01-2021 | 03-31-2021 |
| DEV LOW | C | ACE OCEAN REALMS | 03-01-2021 | 03-31-2021 |
| DEV LOW | C | RESUME WRITING | 03-01-2021 | 03-31-2021 |
| DEV LOW | C | MENTAL MATH | 02-01-2021 | 03-01-2021 |
| DEV LOW | C | ACE STUDY OF PLANETS | 01-01-2021 | 03-01-2021 |
| DEV LOW | C | HISTORY OF WWII | 02-01-2021 | 03-01-2021 |
| DEV LOW | C | ACE HISTORY OF BASEBALL | 12-01-2020 | 02-01-2021 |
| DEV LOW | C | RHU ACE I/O PARENT SELFSTUDY | 08-01-2020 | 11-01-2020 |
| DEV LOW | C | PROBLEM SOLVING ACE CLASS | 09-01-2020 | 09-30-2020 |
| DEV LOW | C | HOW THE GOVERNMENT WORKS ACE | 09-01-2020 | 09-30-2020 |
| DEV LOW | C | PRICIPLES OF CONTRUCTION 730 | 04-14-2020 | 09-17-2020 |
| DEV LOW | C | ACE SCIENTIFIC GENIUSES | 08-01-2020 | 08-31-2020 |
| DEV LOW | C | EMPLOYMENT RPP2/JOB SKILLS | 08-01-2020 | 08-23-2020 |
| DEV LOW | C | EMPLOYMENT RPP2/EMPLOY | 08-01-2020 | 08-23-2020 |
| DEV LOW | C | EMPLOYMENT RPP2/RESUME | 08-01-2020 | 08-23-2020 |
| DEV LOW | C | MONEY SMART RPP3/FINANCE | 08-01-2020 | 08-24-2020 |
| DEV LOW | C | EMPLOYMENT RPP2/EMPLOY | 08-01-2020 | 08-23-2020 |
| DEV LOW | C | ACE OCEAN REALMS | 07-01-2020 | 08-03-2020 |
| DEV LOW | C | INSPIRING THEMES ACE CLASS 1 | 07-01-2020 | 08-03-2020 |
| DEV LOW | C | RHU ACE BANKING 101 SELFSTUDY | 07-01-2020 | 08-03-2020 |
| DEV LOW | C | RHU ACE PROB SOLVING SELFSTUDY | 04-01-2020 | 04-30-2020 |
| DEV LOW | C | ENHANCING YOUR VOCABULARY | 04-01-2020 | 04-30-2020 |
| DEV LOW | C | RHU BOOK CLUB PART 2 | 04-01-2020 | 04-30-2020 |
| DEV LOW | C | RHU ACE PROB SOLVING SELFSTUDY | 04-01-2020 | 05-09-2020 |
| DEV LOW | C | RHU BOOK CLUB PART 1 | 04-01-2020 | 05-09-2020 |
| DEV LOW | C | BLOOD PRESSURE WELLNESS CLASS | 11-02-2019 | 03-01-2020 |
| DEV LOW | C | BUSINESS OF FITNESS/RPP1/HLTH | 11-28-2019 | 02-28-2020 |
| DEV LOW | C | FMC DEVENS HEALTH FAIR | 02-20-2018 | 02-20-2018 |
| ALF | C | BODY CHEM | 05-23-2016 | 05-30-2016 |
| ALF | C | CELL REPRO | 05-30-2016 | 06-05-2016 |
| ALF | C | STRESS MGT | 05-14-2016 | 05-23-2016 |
| ALF | C | ADDV BEHAV | 05-08-2016 | 05-14-2016 |
| ALF | C | PREV CVD | 05-01-2016 | 05-08-2016 |
| ALF | C | CMP FT PRO | 04-24-2016 | 04-30-2016 |
| ALF | C | WT MGMT | 04-18-2016 | 04-24-2016 |
| ALF | C | BODY COMP | 04-10-2016 | 04-18-2016 |



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: COSMO, NICHOLAS  49193-053

SEQUENCE: 00291960
Report Date: 03-04-2022

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ALF | C | BEHAV MOD | 04-03-2016 | 04-10-2016 |
| FTD GP | W | SHU-CRITICAL THINKING | 05-25-2015 | 07-22-2015 |
| FTD GP | C | ADV PAINTING M/W 6-8P | 04-16-2013 | 07-09-2013 |
| FTD GP | W | COMPUTER SKILLS VT-7:30-9:00AM | 03-28-2012 | 04-22-2012 |

**Education Information Summary**

Inmate Cosmo has completed several Adult Continuing Education (ACE) and Release Preparation Program (RPP) classes during his incarceration. He earned his high school diploma in 1989, from McArthur High School in Levittown, New York. Inmate Cosmo attended St. John's University in Queens, New York from 1989 to 1993. He was a finance major and he reportedly discontinued his studies 12 credits short of graduating.

**Discipline Reports**

| Hearing Date | Prohibited Acts |
|---|---|
| 06-03-2020 | 108 : POSSESSING A HAZARDOUS TOOL |
| 02-07-2018 | 299 : DISRUPTIVE CONDUCT-HIGH |
| 09-21-2016 | 328 : POSSESSING GAMBL PARAPHERNALIA |
| 07-01-2015 | 307 : REFUSING TO OBEY AN ORDER |
| 04-14-2015 | 307 : REFUSING TO OBEY AN ORDER |
| 02-27-2013 | 305 : POSSESSING UNAUTHORIZED ITEM |
| 04-17-2012 | 316 : BEING IN UNAUTHORIZED AREA |

**Discipline Summary**

Inmate Cosmo has received one greatest, one high, and five moderate severity incident reports during his current incarceration. His most recent incident report was for Possessing a Hazardous Tool (cell phone) on 05-21-2020. On 02-07-2018, he was found guilty of Disruptive Conduct-High, for communicating in code over e-mail. On 09-21-2016, inmate Cosmo was found guilty of Possessing Gambling Paraphernalia. He was found guilty of Refusing to Obey an Order on 07-01-2015, and 04-14-2015. On 02-27-2013, inmate Cosmo was found guilty of Possessing an Unauthorized Item (bags with water). Finally, on 04-17-2012, he was found guilty of Being in an Unauthorized Area.

**ARS Assignments**

| Facl | Assignment | Reason | Start | Stop |
|---|---|---|---|---|
| DEV LOW | A-DES | TRANSFER RECEIVED | 06-23-2016 | CURRENT |
| ALF | A-DES | TRANSFER RECEIVED | 10-29-2015 | 06-16-2016 |
| FTD GP | A-DES | US DISTRICT COURT COMMITMENT | 12-20-2011 | 10-27-2015 |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 03-26-2012 |
| CARE1-MH | CARE1-MENTAL HEALTH | 01-05-2012 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| C19-RCVRD | COVID-19 RECOVERED | 01-17-2021 |
| NO PAPER | NO PAPER MEDICAL RECORD | 10-22-2015 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 07-06-2016 |
| YES F/S | CLEARED FOR FOOD SERVICE | 07-06-2016 |

**Current PTP Assignments**

| Assignment | Description | Start |
|---|---|---|
| NO ASSIGNMENTS | | |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 06-25-2013 |

**Physical and Mental Health Summary**

Inmate Cosmo is assigned with a care level 1 medical and mental health status. He is essentially healthy and assigned a regular work duty status with no medical restrictions. Inmate Cosmo reported that from approximately 2006 until his arrest in 2009, he consumed alcohol excessively. He does not have a history of illegal substance abuse. He completed the Drug Education class on 06-25-2013.



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: COSMO, NICHOLAS  49193-053

SEQUENCE:  00291960
Report Date: 03-04-2022

## FRP Payment Plan

Most Recent Payment Plan

| FRP Assignment: | **PART** | **FINANC RESP-PARTICIPATES** | Start: **12-14-2016** |
|---|---|---|---|

Inmate Decision: **AGREED**    **$25.00**         Frequency: **QUARTERLY**
Payments past 6 months:    **$25.00**      Obligation Balance: **$179,195,007.6**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
|   |   | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | ASSMT | $200.00 | $125.00 | IMMEDIATE | EXPIRED |
|   |   | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 4 | REST NV | $177,000.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
|   |   | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 3 | REST NV | $179,195,232.63 | $179,195,007.63 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
|   | 12-08-2021 | DEV | PAYMENT | INSIDE PMT | $25.00 |

### Financial Responsibility Summary

Inmate Cosmo is currently participating in the Financial Responsibility Program, and making payments toward his court imposed restitution of $179,195,232.63.  The court ordered him to pay $25 per quarter toward his restitution.

### Release Planning

Upon release, Inmate Cosmo plans to reside with his father in Wantagh, New York.  Pursuant to the Second Chance Act of 2007, he will be reviewed for placement in a Residential Reentry Center (RRC), when he is approximately 17-19 months from his release date.

### General Comments

Inmate Cosmo's social security card is maintained in his file and will be provided to him upon release.

# MALE PATTERN RISK SCORING

| Register Number: | 49193-053 | Date: | 7/26/2021 |
|---|---|---|---|
| Inmate Name: | COSMO, NICHOLAS | | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
|---|---|---|---|---|---|
| **1. Current Age** | > 60 | 0 | | 0 | |
| 41-50 | 51-60 | 7 | | 4 | |
| Click on gray dropdown box to select, then click on dropdown arrow | 41-50 | 14 | 14 | 8 | 8 |
| | 30-40 | 21 | | 12 | |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| **2. Walsh w/Conviction** | No | 0 | | 0 | |
| No | Yes | 1 | 0 | 0 | 0 |
| **3. Violent Offense (PATTERN)** | No | 0 | | 0 | |
| No | Yes | 5 | 0 | 5 | 0 |
| **4. Criminal History Points** | 0 - 1  Points | 0 | | 0 | |
| 2 - 3 Points | 2 - 3  Points | 8 | | 4 | |
| | 4 - 6  Points | 16 | 8 | 8 | 4 |
| | 7 - 9  Points | 24 | | 12 | |
| | 10 - 12  Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| **5. History of Escapes** | None | 0 | | 0 | |
| None | > 10 Years Minor | 2 | 0 | 1 | 0 |
| | 5 - 10 Years Minor | 4 | | 2 | |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| **6. History of Violence** | None | 0 | | 0 | |
| None | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 - 10  Years Minor | 3 | 0 | 3 | 0 |
| | 10 - 15 Years Serious | 4 | | 4 | |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 - 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| **7. Education Score** | Not Enrolled | 0 | | 0 | |
| HS Degree //GED | Enrolled in GED | -2 | -4 | -1 | -2 |
| | HS Degree / GED | -4 | | -2 | |
| **8. Drug Program Status** | No DAP Completed | 0 | | 0 | |
| No Need | NRDAP Complete | -3 | -9 | -1 | -3 |
| | RDAP Complete | -6 | | -2 | |
| | No Need | -9 | | -3 | |
| **9. All Incident Reports  (120 months)** | 0 | 0 | | 0 | |
| >2 | 1 | 1 | 3 | 1 | 3 |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| **10. Serious Incident Reports  (120 months)** | 0 | 0 | | 0 | |
| 2 | 1 | 2 | 4 | 2 | 4 |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| **11. Time Since Last Incident Report** | 12+ months or no incidents | 0 | | 0 | |
| 12+ months or no incidents | 7-12 months | 2 | 0 | 1 | 0 |
| | 3-6 months | 4 | | 2 | |
| | <3 | 6 | | 3 | |
| **12. Time Since Last Serious Incident Report** | 12+ months or no incidents | 0 | | 0 | |
| 12+ months or no incidents | 7-12 months | 1 | 0 | 1 | 0 |
| | 3-6 months | 2 | | 2 | |
| | <3 | 3 | | 3 | |
| **13. FRP Refuse** | NO | 0 | | 0 | |
| NO | YES | 1 | 0 | 1 | 0 |
| **14. Programs Completed** | 0 | 0 | | 0 | |
| >10 | 1 | -2 | | -1 | |
| | 2 - 3 | -4 | -8 | -2 | -4 |
| | 4 - 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| **15. Work Programs** | 0 Programs | 0 | | 0 | |
| >1 Program | 1 Program | -1 | -2 | -1 | -2 |
| | >1 Program | -2 | | -2 | |
| **Total Score (Sum of Columns)** | | General: | 6 | Violent: | 8 |
| **General/Violent Risk Levels** | | General: | Minimum | Violent: | Low |
| **OVERALL MALE PATTERN RISK LEVEL** | | | Low | | |